Youssef H. Hammoud, esq. CA No. 321934
yh@lawhammoud.com
HAMMOUD LAW, PC
3744 E. Chapman Ave., #F12269
Orange, CA 92859
Telephone: (949) 301-9692
*Attorney for Plaintiff*
Maria T. Lopez

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

|  |  |
|---|---|
| MARIA T. LOPEZ,<br><br>                             Plaintiff,<br><br>            v.<br><br>REALPAGE, INC. (a/k/a LEASINGDESK SCREENING),<br><br>                             Defendant. | Civil Action No.<br><br><br>**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT AND DEMAND FOR JURY TRIAL** |

Plaintiff Maria T. Lopez ("Plaintiff"), by and through the undersigned counsel, brings this Complaint and Demand for Jury Trial ("Complaint") against RealPage, Inc. (a/k/a LeasingDesk Screening) ("RealPage"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of federal laws: 15 U.S.C. § 1681 *et seq.*

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

1

3.    Defendant transacts business in this District; Defendant purposefully avails itself of the protections of this District; and Defendant regularly directs business at the District, such that personal jurisdiction is established.

## PARTIES

4.    Plaintiff resides in Los Angeles County, California and qualifies as a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c).

5.    RealPage is a "consumer reporting agency," as it "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. 15 U.S.C. § 1681a(f).

6.    RealPage is a Delaware corporation doing business throughout the United States, including in the State of California. Through its subsidiary LeasingDesk Screening, Defendant operates a principal place of business at 2201 Lakeside Boulevard, Richardson, Texas 75082. Defendant may be served through its registered agent, C T Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, California 91203.

7.    At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

8.    Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

9.    After receiving a job offer to work at Amazon in Kansas, Plaintiff decided to move her family to the Midwest.

- 2 -

10.     Plaintiff believed moving to the Midwest would allow her to provide a better life for her family because Plaintiff struggled to find work in California and California has a high cost of living.

11.     Plaintiff is a single mother to six-year-old twins.

12.     In or around late July or early August 2022, Plaintiff submitted a rental application to non-party Bauer Farms Apartments and Townhomes ("Bauer Farms") located in Lawrence, Kansas.

13.     Plaintiff was especially excited about the move because of how much space she would have for her family.

14.     As a part of her application, Plaintiff consented to a background check.

15.     Plaintiff was confident that she would be approved, as she has never had any issues with her tenant screening reports before.

16.     Upon information and belief, Bauer Farms purchased Plaintiff's tenant screening report ("background report" or "consumer report") from Defendant in or around August 2022.

17.     Upon information and belief, Defendant completed Plaintiff's RealPage background report on or before August 18, 2022.

18.     Upon information and belief, Defendant provided Bauer Farms with a copy of Plaintiff's RealPage background report on or before August 18, 2022.

19.     On or about August 18, 2022, Plaintiff received an email from RealPage on behalf of Bauer Farms denying her rental application.

20.     The denial email informed Plaintiff that Bauer Farms was "unable to approve [her] application at this time" due to an unsatisfactory credit history and unsatisfactory criminal and other public records.

21.     Plaintiff was confused as she did not have a criminal history and had spoken with the leasing office about her credit history.

22.     Upon information and belief, Bauer Farms informed Plaintiff that her credit would not prevent her from being approved, but that she may need to pay a higher deposit before moving in.

23.     Thereafter, Plaintiff requested a copy of her consumer report from Defendant.

24.     On or about August 25, 2022, Plaintiff received a copy of her background report.

25.     After reviewing her background report, Plaintiff was shocked to see two pending felony charges that did not belong to her.

26.     Specifically, the "Criminal & Other Records" section included two pending felony charges from Dade County, Florida.

27.     Both charges were associated with Case No. F21006066 and included a "record date" of 04/09/2021.

28.     The first felony charge was for "ORGANIZED FRAUD/50K+."

29.     The second felony charge was for "GRAND THEFT 1ST DEG."

30.     Plaintiff has never been arrested for, charged with, or convicted of any of the foregoing criminal offenses.

31.     In fact, Plaintiff has never been arrested for, charged with, or convicted of any criminal offenses at all.

32.     Upon information and belief, Defendant erroneously associated another consumer's pending felony charges with Plaintiff's consumer report.

- 4 -

33.     While the report indicated Defendant allegedly matched Plaintiff's first name, last name, and birthday to the criminal records, Defendant did not match the criminal records to Plaintiff's middle name, social security number, address, or other personal identifiers.

34.     A cursory review of the public court records for Case No. F21006066 indicates that a "Maria **F.** Lopez" was charged with "ORGANIZED FRAUD/50K+" and "GRAND THEFT 1ST DEG" on or about April 9, 2021.

35.     "Maria Lopez" is a common name.

36.     Upon information and belief, Defendant matched the criminal records with Plaintiff based only on her first name, last name, and date of birth.

37.     Plaintiff and the criminal defendant associated with Case No. F21006066 do not have identical names.

38.     Plaintiff's full name is Maria Teresa Lopez Arboleya.

39.     Upon information and belief, the defendant's middle name is not "Teresa."

40.     Upon information and belief, the defendant's middle initial is not "T."

41.     Upon information and belief, the defendant's last name is just Lopez, not "Lopez Arboleya."

42.     Upon information and belief, Plaintiff and the criminal defendant associated with Case No. F21006066 have different social security numbers.

43.     Upon information and belief, the criminal defendant associated with Case No. F21006066 has a social security number ("SSN") beginning with 770.

44.     Plaintiff's SSN begins with 596.

45.     Upon information and belief, the criminal defendant associated with Case No. F21006066 resides at **** SW 142nd Street in Miami, Florida.

46.     Plaintiff has never lived at **** SW 142nd Street in Miami, Florida.

47.     Plaintiff has not lived in Florida since 2007.

48.     Further, Plaintiff has not even *visited* Florida since 2011.

49.     The information indicating that Plaintiff was charged with "ORGANIZED FRAUD/50K+" and "GRAND THEFT 1ST DEG" is patently inaccurate.

50.     Upon information and belief, had Defendant not inaccurately reported two pending felony charges on Plaintiff's consumer report, Plaintiff would have been approved for an apartment at Bauer Farms.

51.     Upon information and belief, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it includes in tenant screening reports.

52.     Upon information and belief, Defendant knowingly and willfully maintains deficient procedures because reporting more information is more profitable than reporting less and potentially leaving information off of a consumer report.

53.     For example, upon information and belief, Defendant allowed two pending felony charges for "ORGANIZED FRAUD/50K+" and "GRAND THEFT 1ST DEG" to appear on Plaintiff's consumer report without matching her full name, address, social security number, or driver's license number.

54.     Instead of employing reasonable procedures, as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own tenant screening products.

55.     Upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy.

56.     Defendant is aware that criminal information is often matched based on incomplete personal identifiers.

57.     Upon information and belief, Defendant purchased Plaintiff's information from one or more third-party vendors that merely compile criminal data from various online sources without verifying its accuracy with actual court records.

58.     Upon information and belief, none of Defendant's third-party vendors warrant the accuracy of the information they sell.

59.     Upon information and belief, Defendant does not exercise due diligence in ensuring it is contracting with reliable third-party vendors.

60.     Upon information and belief, Defendant does not conduct periodic quality assurance audits to ensure that it is receiving reliable consumer information from its third-party vendors.

61.     Upon information and belief, Defendant has been sued under the FCRA by consumers in the past for associating erroneous criminal records with rental applicants.

62.     Therefore, Defendant has actual notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate consumer information.

63.     Defendant knows that its services are used to make significant consumer decisions.

64.     Upon information and belief, Defendant knew or should have known that the information it provides to rental companies and landlords is used to determine whether a tenant's application is approved.

65.     Upon information and belief, Defendant knew or should have known that rental companies and landlords make decisions on tenants' applications based solely on the information contained in its reports.

66.     Upon information and belief, Defendant purchases criminal records information from third-party vendors.

67.     Upon information and belief, those third-party vendors explicitly disclaim the accuracy of the information they provide to Defendant.

68.     Upon information and belief, Defendant reports and publishes the information provided by the third-party vendors without verifying its accuracy.

69.     Upon information and belief, Defendant knew or has reason to know that the third-party vendors it purchases consumers' information from often provide inaccurate and incomplete records.

70.     Upon information and belief, Defendant reported and published unverified criminal information without employing reasonable procedures to assure its accuracy because employing such procedures would cut into its profits.

71.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

72.     At common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

73.     As a direct result of Defendant's conduct, Plaintiff was denied for an apartment.

74.     As a direct result of Defendant's conduct, Plaintiff was forced to withdraw her application for employment with Amazon.

75.     As a direct result of Defendant's conduct, Plaintiff is afraid to apply for other jobs and rentals.

76.     Specifically, Plaintiff worries that the inaccurate criminal information will reappear on her consumer reports and cause job denials or additional rental denials.

77.     Consequently, Plaintiff suffers from financial insecurity and has had to postpone her dream of moving her family out of California.

78.     As a direct result of Defendant's conduct, Plaintiff has been deprived of the opportunity to provide a better and more comfortable life for her children.

79.     Defendant's conduct has caused Plaintiff to feel like a disappointment.

80.     Defendant's conduct has also caused Plaintiff to suffer from anxiety, frustration, and stress.

81.     As a direct result of Defendant's conduct, Plaintiff has difficulty falling asleep. Consequently, Plaintiff suffers from sleepless nights.

82.     Plaintiff was embarrassed and humiliated to be associated with felony charges for "ORGANIZED FRAUD/50K+" and "GRAND THEFT 1ST DEG".

83.     As a direct result of Defendant's conduct, Plaintiff has suffered actual damages including but not limited to: rental application denial, financial insecurity, wasted time, wasted money, damage to her reputation, sleepless nights, and emotional distress, including mental anguish, anxiety, stress, frustration, humiliation, and embarrassment.

## COUNT I

### Defendant's Violations of 15 U.S.C. § 1681e(b)

84.     Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

85.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it regulates all "consumer reports." 15 U.S.C. § 1681a(d).

86.     In the parlance of the FCRA, tenant screening reports are "consumer reports."

87.     The FCRA provides a number of protections for rental applicants who are subject to tenant screening reports.

88.     The FCRA imposes duties on consumer reporting agencies, like Defendant, to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

89.     Under 15 U.S.C. § 1681e(b), "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

90.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish, maintain, and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report.

91.     Specifically, Defendant failed to establish, maintain, and/or follow procedures to prevent it from inaccurately reporting two pending felony charges on Plaintiff's consumer report.

92.     Defendant unreasonably reported pending felony charges for "ORGANIZED FRAUD/50K+" and "GRAND THEFT 1ST DEG" without matching Plaintiff's full name, address, social security number, or driver's license number.

93.     Instead, upon information and belief, Defendant blindly relied on a third-party vendor's information, despite knowing that third-party vendors often match consumer information based on incomplete identifiers and that third-party vendors do not warrant the accuracy of the information they sell.

- 10 -

94.     As a result of Defendant's conduct, action and inaction, Plaintiff has suffered actual damages, including but not limited to: rental application denial, financial insecurity, wasted time, wasted money, damage to her reputation, sleepless nights, and emotional distress, including mental anguish, anxiety, stress, frustration, humiliation, and embarrassment.

95.     Defendant's violations of the FCRA were willful and knowing. Further, Defendant's violations were committed in reckless disregard of Plaintiff's rights as a consumer. Accordingly, Defendant is liable for Plaintiff's statutory, actual, and punitive damages pursuant to 15 U.S.C. § 1681n.

96.     Alternatively, Defendant's violations of the FCRA were negligent, rendering it liable for Plaintiff's statutory and actual damages pursuant to 15 U.S.C. § 1681o.

97.     In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

98.     Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Maria T. Lopez, respectfully requests judgment be entered against Defendant, for the following:

A.      Actual damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

B.      Statutory damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

C.      Punitive damages pursuant to 15 U.S.C. § 1681n;

D.      Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, 1681o;

E.      Punitive damages to be determined at trial, for the sake of example and punishing Defendant for its malicious conduct, pursuant to Cal. Civ. Code § 3294;

F.      Any pre-judgment and post-judgment interest as may be allowed under the law; and

G.      Other and further relief as the Court may deem just and proper.

Respectfully submitted this 3rd day of October 2022.

/s/ Youssef H. Hammoud
Youssef H. Hammoud, esq.
Hammoud Law, PC
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693
E: yh@lawhammoud.com

Attorney for Plaintiff
Maria T. Lopez